Intro Good morning. May it please the court, my name is Jennifer O'Brien. I represent the plaintiff, appellant, and just as a preliminary matter, request to reserve two minutes. Yes. This case arises out of a breach of a collective bargaining agreement, and we're on appeal for the dismissal of count two, which is a breach of the agreement between the parties under section 301 of the LMRA, the Labor Management Relations Act. And the main issue on appeal is whether my client can bring a claim under section 301 of the LMRA for breach of contract directly against the employer only, or whether he's required to bring a so-called hybrid claim, which is not only a claim for breach of the collective bargaining agreement, but also a breach of the duty of fair representation against the union. The big difference is the hybrid claim has a short six-month limitation period, whereas the breach of contract claim that's known as a straight breach of contract claim has a six-year limitations period. So it makes the difference as to whether my client can bring his claim or not. I think one thing I'd like to focus on was the decision. It was under reconsideration. The court seemed to focus on, the district court seemed to focus on the case of its Connolly versus Boston-Edison, and that's what I'd like to discuss, because it's our position that the court's construction of that case was an error, and it's... Go ahead. You've come in and pled that there was no basis to terminate your client, and that therefore there was a breach of contract. We have, unusually in this case, that last chance agreement, which is not in the same language as other last chance agreements. If you're going to read it literally, it seems to say that the employer can terminate your client, and then the termination becomes effective without having to go through grievance and arbitration. It doesn't seem to address the question, and therefore you can go straight to court. It doesn't seem to address the question of what happens if your client contests that they had an adequate basis to terminate. Exactly. That part's missing from it. There is no dispute mechanism in it. Our position has been that because there is no agreement in the memorandum of agreement, last chance agreements, we haven't given up litigation. Doesn't it in fact address, in part, by saying that it won't be subject to grievance and arbitration, so your only recourse is to go to court? Yes, Your Honor. That leaves... That's originally what Judge Saylor had held, was that because that was the agreement of the parties, it left that door open to litigation, because that was the only way to resolve a dispute over the termination. So that was our position. Judge Saylor reversed his original decision and held that the Boston Edison, the Conley v. Boston Edison case, required my client to bring a hybrid claim. The reason that we're saying that wasn't accurate is, in the cases, in fairness, it is a little hard to read, but in that case, Mr. Conley, he had a history of drug abuse. He was suspended for excessive absenteeism. And right after his suspension, I think it was January 10th of 1999, he still, there's nothing in the record to indicate he didn't have the right to file a grievance. And in fact, Magistrate Judge Dean notes that it appears he went through a grievance process, and he decides, Mr. Conley, to resolve that grievance or the dispute through this last chance agreement. And he's under suspension at the time. He can only come back under the agreement if he agrees to be found fit for duty, which entails some drug testing. So that's January 25th of that same month. So for Mr. Conley, he doesn't pass the drug test, and he never comes back to work. He's suspended. So Magistrate Judge Dean found that there, he'd exhausted his administrative remedies, and as I said, that grievance had been available to him. And so therefore, he now was bound by the finality provisions of the collective bargaining agreement. The difference in my client's case is that there wasn't this one transaction where he filed a grievance, and it had some sort of agreement where they were on some sort of, I don't know if you want to call it like a suspension period. My client's only grievance that's touched upon in the complaint occurred in July of 2007. And we're not arguing that we're appealing that. That grievance has been settled. So your client, as I understand it, does your client have any bone to pick with the union? No. And your client was fine with the memorandum of agreement that was entered into? Correct. What you want to say is they breached it, and you want to remedy it? Exactly. We're trying to enforce that agreement. So that's the purpose of the lawsuit is to enforce the agreement that he can't just be fired for any reason, that it needs to be consistent with the terms of the agreement. In how do you view, if we were to say that you could challenge their attempt to terminate when the condition for termination didn't exist, at least that's the allegation, is that a common law breach of a contract, i.e. the memorandum of agreement? Or is it also still a 301 agreement, 301 action to which both parties have waived the grievance and terminations? It is a 301 claim, but the argument is that it's subject to six years because the state statute of limitations would apply versus the six month. So I'm just curious, when you get to your assuming you survive dismissal, what is this dispute really about? So my client, after, it was a good paying job. He was making $25 an hour, he's a carpenter, he's got a high school education, he's an older guy, and he just really wasn't able to find, unfortunately, a great job like this again. So it really did have some impact on his earnings after that. So we were looking, we did go through the camp process with Judge King. So essentially he's looking for the wages that he lost, or the reduction in wages. But he disagrees that there was any reason to terminate him? Correct. He thinks that this particular supervisor didn't like him and that he was a bully and that he got rid of him because he didn't like my client. And not because my client failed to comply with the generally applicable work standards, which was the standard in the agreements between the parties. And I'll, unless there's something further. Good afternoon, Your Honors. Kate Fergus, I represent Children's Hospital Boston. I actually agree, my sister counsel, that the only dispute in this case is whether Mr. DeGranis had a claim under Section 301 that he could bring in the district court. Learned Judge Saylor made the determination that the answer to that question is no. And we agree with him 100% and here's why. Federal labor policy is to encourage peaceful settlements of labor disputes by the collective bargaining process and to promote the relatively rapid disposition of labor disputes. Even when the employer has entered into an agreement, which it thinks is in its best interest, that you're not going to go through grievance and arbitration? Don't you have a bit of a problem? I don't think there's a problem in this case because he had the benefit of a grievance process, which he pursued to finality. The finality of that grievance process was the last chance agreement. That's the embodiment of the finality of their earlier grievance. He's now saying, you terminated me without cause. But that respectfully, pardon me, and you said in this last chance agreement, and when we terminate you, you don't have, we're not going to go through grievance or arbitration again. That's right, Your Honor, but that's not a license to go into federal court under any circumstances. He still has to make a peace. Well, why isn't that? I mean, suppose the day after you fired him, he filed a 301 action in federal court, right? And normally when someone files a 301 action, normally there's a grievance and arbitration provision that would be controlling, and you'd move to dismiss that federal action, and your motion would be predicated on the fact that the parties have an agreement that there'll be grievance and arbitration. That's the reason federal courts defer. Exactly. Well, here, in this case, when you made that motion, they'd say, that's good, that's normally the case, but here, your client and the plaintiff have actually both agreed that there won't be any grievance for this type of dispute. So why would the federal court then reject the 301 action? Because you can't look at the last chance agreement in a vacuum. The last chance agreement is the finality of the original grievance process. This is what Mr. DeGranis bargained for, for better or for worse. Right, but he bargained that he'd have a job, and you got in return, you could fire him if a certain condition occurred. He violated. And your client says the condition occurred, he says it didn't occur. It sounds like a lawsuit to me, and normally we'd go to arbitration, but you waived that. He waived it through the collective bargaining process. And you did too. Yes. Okay, so why not in court? But again, Your Honor, that's not a license to go into federal court under any circumstances, and here's why. Number one, the grievance process in the collective bargaining agreement that he invoked gave him finality. Let me ask you this. You say he couldn't go into federal court. Suppose he had initiated a grievance and arbitration provision, a demand to grieve and arbitrate this. Your client would have said, you agreed there would be no grievance and arbitration of this dispute. Correct. So he can't go into court. I'm not saying he can't go into court. He can go into court on a hybrid claim. Well, but he's got no bone to pick with the union. He does have a bone to pick with the union. Which is what? If you look at page three of his reply brief that he just submitted, he says he did not have the benefit of an error-free grievance process, and therein lies the rub, Your Honor, because if he didn't have an error-free grievance process, that's screaming hybrid claim. But he doesn't want to, we've just been told they're fine with the agreement. With which agreement? The memorandum of agreement. That Mr. DeGrandis is fine with it? Yeah, he's got no, he thinks it's fine. He's not repudiating it. He's willing to abide by it. He just wants your client to abide by it. I don't have the, we don't have the benefit of knowing what he meant by the fact that he didn't have an error-free grievance process, but the fact is that the deal he struck through his union was that he was waiving grievance. That does not give him a license after he obtained finality to run into federal court on any claim other than a hybrid claim. It's not, the issue is not that he can't come into federal court. Of course he can come into federal court and seek redress if he can show there was an error in the grievance process that resulted in the last chance agreement. Pardon me, but you seem to read the memorandum of understanding as limited to the particular grievance that was at stake then. He now has the grievance of being terminated. Is it your view that he's not entitled to seriatim grievance? The point is, he's not entitled to seriatim grievance. He's not entitled, if I could, if I could, Your Honor. Yes, but I'm not understanding your argument. The point is, here's what happened in this case. The collective bargaining agreement that Mr. DeGrandis had available to him had a grievance process. He invoked that process, he pursued that process, and his union, and he came to an agreement with the employer which gave him finality. Under the finality rule, he's bound by the result. And if he wants to get around the finality rule, he has got to come to this court and say, it wasn't fair to me because the union did something wrong. And if the employer, if he wants to get back to the breach. The employer is barred by this agreement from, it's both sides, are barred from using the grievance procedure. At the time the memorandum was executed, he did not have, he had not been terminated. Right. Correct? Yes. And so now he's been terminated, and you have a memorandum of understanding which in no way, by its terms, says it is limited to the past. In fact, you read it and it appears it is a future-oriented because you think you're going to terminate him. So why haven't you just given up the finality issues that you all could have used? And why can't he just proceed in federal court? He can proceed in federal court. That's never been the issue here. But the issue is that Okay, to go back to Judge Hayata's, he doesn't have a problem with his union. But then it begs the question why he's claiming in his reply brief that he didn't have an error-free grievance process. So you're saying only because he put that question in his reply brief, he has to sue the union? We don't know So imagine that weren't there, okay? We don't know, based on the complaint that was filed in this case, what precisely the issue is, other than that there may have been an issue with the employer. I looked at the complaint. The issue is that he says he didn't violate the generally applicable work standards, so you couldn't terminate him under the memorandum of agreement, so it's a breacher contract. It seems it's a very clear notice pleading. And if that's the case, and I accept Your Honor's representation of that fact, then his remedy to get to breach was to file a hybrid claim. But why? I know he doesn't cite any case law that says otherwise. Last chance agreements But let me put it this way. What would he say about the union if he likes this agreement? He likes the memorandum of agreement. He thought the union did a bang-up job, okay? What's he supposed to allege against the union and the hybrid action? He's supposed to allege that the union should have preserved me a method of grievance No, he likes the deal. He got a good deal. Then he's bound by the result, and the result is he doesn't get grievance Exactly, he wants to enforce the deal. He doesn't get grievance Suppose the memorandum of agreement said, your client can fire him and pay him $100,000. He was ecstatic, right? Because he was going to go get another job anyhow, so he's really happy with his union. Your client then fires him and doesn't pay him $100,000. What's he supposed to do? That's a different situation than what we have here. I know, that's what hypotheticals are called. So what's he supposed to do in that circumstance? Then in that case, if there's no mechanism for him to obtain the $100,000, he again has to file a hybrid claim against the union. And what would he say the union did wrong? Because the deal didn't serve his interests. He didn't end up getting his $100,000. What he would have gotten in that case is it would have been a claim for damages. Yes, but he also would have had the claim that the deal he struck didn't guarantee him the money. Whatever the reason was, his recourse is a hybrid claim against the union. There's no case law that says otherwise. The point is that last chance agreements are commonly used methods of resolving grievances. The federal labor policy is not promoted if we let employees run into court five years and 361 days later to file a claim for breach of a last chance agreement. The last chance agreement is an effort to be efficient in this process. Perhaps if this last chance agreement had been worded differently, that argument would have some merit. Except, Your Honor, which respectfully, that these last chance agreements, that these last chance agreements, predominantly from what I've read, and I've read them from nearly every circuit, they do include a summary termination provision. Because you get the benefit, you as an employee get the benefit of foregoing termination and in exchange for that, you're waiving your grievance process. It is not a license to run in federal court. Once you get the benefit of a grievance process, the case law is you're stuck with the result. Here's the result, for better or for worse. This is the deal the union struck for you and you're bound by it. Thank you. Do you care to use your remaining two minutes? Very briefly. Just to address the whole issue of the reply brief and the no error free grievance process, what I meant by that was he didn't have a grievance when he was terminated in February. So there wasn't a grievance process then because they had raised in their brief that he had an error free grievance process and we couldn't establish that there was any case law that said that once you've had an error free grievance process, you're entitled to bring your claim in court. I was just trying to clarify that. He didn't in February. That's it, your honor. Thank you. All rise, please. This session of the Honorable United States Court of Appeals is now recessed until the December session. God save the United States of America and his Honorable Court.